ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| JOSÉ M. MONTAÑEZ RODRÍGUEZ Recurrente v. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN Recurrido | TA2026RA00242 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación Caso Número: T4-27562 |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de junio de 2026.

Comparece el señor José Miguel Montañez Rodríguez (Sr. Montañez Rodríguez o Recurrente), por derecho propio, mediante un recurso intitulado *Revisión Administrativa,* presentado el 11 de mayo de 2026. Nos solicita que dejemos sin efecto el dictamen del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (DCR) que denegó su petición de reclasificación a custodia mínima.

Por los fundamentos que exponemos a continuación, confirmamos el dictamen administrativo recurrido. Veamos.

**I.**

Según expone el Sr. Montañez Rodríguez en su recurso, luego de participar de programas, terapias y talleres disponibles dirigidos a su rehabilitación, fue reclasificado al nivel de custodia mediana, el 29 de mayo de 2021, al cabo de casi ocho años de reclusión. Añade que, con posterioridad a dicha reclasificación, ha formado parte del Programa de Teatro Correccional y fue certificado como artesano por la Compañía de Fomento Industrial de Puerto Rico, producto de lo cual, ha salido a la libre comunidad en más de cien ocasiones en calidad de artesano y como integrante del programa teatral.

Consigna que, el 31 de marzo de 2026, el DCR se reunió para evaluar su plan institucional y acordó ratificar su clasificación a custodia mediana, mediante un pronunciamiento notificado ese mismo día. También se desprende del recurso que, en respuesta a lo anterior, el Sr. Montañez Rodríguez solicitó sin éxito la reconsideración ante el DCR, quien presuntamente la denegó mediante un dictamen notificado, el 28 de abril de 2026.

Nuevamente en desacuerdo, el 11 de mayo de 2026, el Recurrente acude ante esta Curia y le imputa al DCR lo siguiente:

> Erró el Departamento de Corrección y Rehabilitación al ratificar el nivel de custodia mediana, alegando como único criterio para sostener su determinación la existencia de "modificaciones no discrecionales", obviando así su propia evaluación y análisis, fundamentada en múltiples criterios, los cuales sin duda alguna sustentan una modificación a custodia mínima.

> Erró el Departamento de Corrección y Rehabilitación al realizar una evaluación mecánica, proforma violentando así los preceptos básicos contenidos en la Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, dirigidos a la rehabilitación del confinado y, a su vez, contenidos en la propia misión y propósito de ser del Departamento y en la génesis para la creación del Manual para la Clasificación de Confinados, Número 8281 del 30 de noviembre de 2012; por tanto, el criterio utilizado para negar la modificación de custodia es uno arbitrario que está en contravención con el espíritu y objetivo de la ley que autoriza el manual donde está contenido.

En reacción, el 13 de mayo de 2026, notificamos una *Resolución* en la cual concedimos cinco días al Sr. Montañez Rodríguez para acreditar su indigencia o, en su defecto, para pagar los aranceles correspondientes a la presentación del recurso. Le conferimos igual plazo para que presente una copia del dictamen recurrido y de cualquier otro documento relevante, a modo de que su recurso quede perfeccionado conforme a derecho. Lo antes, bajo apercibimiento de que, su incumplimiento podría conllevar la desestimación de su recurso.

El 29 de mayo de 2026, el Sr. Montañez Rodríguez acredita su indigencia mediante una *Solicitud para Declaración de Indigencia,* la

cual declaramos Ha Lugar. Sin embargo, a pesar de que ha transcurrido mayor tiempo al otorgado, el Recurrente no ha cumplido con presentar los documentos que deben formar parte del apéndice de su recurso para su perfeccionamiento y en aras de esta Curia auscultar nuestra jurisdicción.

**II.**

### A. La reclasificación de custodia

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo 1, establece la política pública del Estado de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 519 (2022). Con el fin de cumplir el mandato constitucional, el DCR tiene la obligación de clasificar adecuadamente a la población penal y revisar dichas clasificaciones continuamente de conformidad con los ajustes y cambios de la clientela. *Íd.*

A tales fines, el DCR creó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151 de 22 de enero de 2020 (Reglamento Núm. 9151). Por un lado, el citado reglamento concede facultad al DCR para estructurar el plan de tratamiento institucional de un recluso basado en sus necesidades, capacidades, intereses, limitaciones y funcionamiento social. Lo anterior incluye: el nivel de custodia, trabajo, estudios o adiestramiento vocacional, programas o servicios, entre otros. Por otro lado, el Reglamento Núm. 9151 persigue ubicar a cada confinado en el nivel de custodia menos restrictivo posible al cual sea elegible, sin poner en riesgo la seguridad y necesidades de la sociedad, de los demás confinados y del personal correccional.

Cabe destacar que en su Sección II, el referido reglamento enumera nueve criterios objetivos para evaluar el nivel de custodia, a saber: gravedad de los cargos/sentencias actuales, historial de delitos graves, historial de fuga, historial de acciones disciplinarias (últimos 18 meses), sentencias anteriores por delitos graves como adulto, abuso de alcohol o drogas, edad actual, empleo o educación y residencia.

Sin embargo, el Tribunal Supremo dictaminó en *Lebrón Laureano v. Depto. Corrección,* supra, a la pág. 522, que tales criterios han de evaluarse junto a otros criterios subjetivos - discrecionales y no discrecionales- previo a determinar el grado de custodia a recomendar. Entre ellos, la gravedad del delito, el historial de violencia excesiva, afiliación prominente con grupos, confinado de difícil manejo, desobediencia ante las normas o rehusarse al plan de tratamiento, grados de reincidencia, riesgo de fuga o evasión, comportamiento sexual agresivo, trastornos mentales o desajustes emocionales, peligro o amenaza y reingreso por violación a normas.[1]

Cónsono con lo antes discutido, nuestro más Alto Foro dispuso en *Lebrón Laureano v. Depto. Corrección,* supra, que el nivel de custodia responde al resultado entre la puntuación en la evaluación de custodia, las consideraciones especiales de manejo y las modificaciones discrecionales y no discrecionales ya sea para un nivel de custodia mayor o menor. Sobre las modificaciones discrecionales, la Sección III (F) del Reglamento Núm. 9151 requiere que la determinación especifique cuál modificación aplica y que provea detalles al respecto.

Al mismo tiempo, el Reglamento Núm. 9151 dispone que los confinados que cumplen sentencia de 99 años o más deberán

---

[1] Sección III (D) del Reglamento Núm. 9151.

permanecer en custodia máxima durante cinco (5) años. Transcurrido lo anterior, podrán ser reclasificados a custodia mediana si el resultado del instrumento de clasificación lo sustenta. Puntualizamos que, el Reglamento Núm. 9151 añadió que la gravedad del delito y el largo de la sentencia no deben utilizarse como fundamento para mantener a un confinado en custodia máxima. Análogamente, el Tribunal Supremo dictaminó que el proceso de reevaluación del nivel de custodia no es un castigo por el delito cometido sino más bien una herramienta de rehabilitación fundamentada en la conducta institucional del confinado, no en el delito por el cual cumple una sentencia.

**B. El recurso de revisión y su perfeccionamiento**

En materia de revisión judicial, el Artículo 4.006 de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, establece que el Tribunal de Apelaciones tendrá competencia para revisar las decisiones de las agencias administrativas. *Ramos Sánchez v. Banco Popular de Puerto Rico h/n/c/ Popular Mortgage y otros,* 2026 TSPR 63, resuelto el 10 de junio de 2026. A tenor con lo anterior, la Sección 4.2 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9672, dispone que, las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones, una vez la parte adversamente afectada haya agotado todos los remedios disponibles. *Tricoche Matos y otra v. Luis Freire Div. of K.M.A. Associates of PR, Inc.*, 2025 TSPR 92, resuelto el 1 de octubre de 2025. Como se sabe, una orden o resolución final "adjudica de manera definitiva derechos y obligaciones de personas específicas." *Ramos Sánchez v. Banco Popular de Puerto Rico h/n/c/ Popular Mortgage y otros,* supra.

En el ejercicio de tal facultad revisora, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos

administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta autoridad revisora delimita la discreción de los organismos administrativos, a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Ramos Sánchez v. Banco Popular de Puerto Rico h/n/c Popular Mortgage y otros,* supra. Por último, permite a los foros judiciales velar porque los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son -en muchas ocasiones- los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.* Entiéndase que, los foros judiciales no tienen que ser deferentes ante la interpretación de derecho que realice un organismo administrativo, sencillamente porque la legislación es ambigua. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56, resuelto el 21 de mayo de 2025. Por tanto, al revisar una actuación de una agencia administrativa, el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el

organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.*

A esos fines, la Regla 57 del Reglamento del Tribunal de Apelaciones, *supra*, establece un término jurisdiccional de treinta (30) días para recurrir ante esta Curia de una orden o resolución final de una agencia u organismo administrativo.

Cónsono con lo antes y en aras de esta Curia acreditar su jurisdicción, la Regla 59(E)(1)(d) del Reglamento del Tribunal de Apelaciones, *supra*, requiere que, el apéndice del recurso de revisión incluya "[t]oda moción, resolución u orden necesaria para acreditar la interrupción y reanudación del término para presentar el recurso de revisión." De igual manera, la parte recurrente deberá incluir en el apéndice de su recurso cualquier documento que forme parte del expediente administrativo y que guarde relación con los asuntos planteados en su recurso.[2]

Cabe destacar que, el incumplimiento con las reglas de los foros apelativos puede impedir la revisión judicial. Véase, *Montañez Leduc v. Robinson Santana*, 198 DPR 543, 549-550 (2017). Así, las disposiciones reglamentarias que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente y su cumplimiento no puede quedar al arbitrio de las partes o sus abogados. *Isleta v. Inversiones Isleta Marina*, 203 DPR 585, 590 (2019).

**III.**

Tal cual consignamos en el tracto procesal, en su recurso, el Recurrente suplica que revoquemos la determinación del DCR mediante la cual se negó a reclasificarlo a custodia mínima. Según el Recurrente, el DCR se apartó de su propia misión rehabilitadora y, de forma automática, arbitraria y en violación a sus derechos constitucionales, denegó la modificación de su custodia. Asegura ser

---

[2] Regla 59(E)(1)(f) del Reglamento del Tribunal de Apelaciones, *supra.*

elegible a un nivel de custodia mínima tras obtener una puntuación de 2 en su evaluación final de reclasificación. Añade que, a pesar de estar cumpliendo reclusión por un delito grave, a su entender, merece un nivel de custodia menos restrictivo. Para sustentar lo anterior detalla que, pertenece desde el año 2021 al Programa de Teatro Correccional, que ha demostrado que sabe funcionar con medidas de mínima supervisión, que ha ejercido un buen comportamiento en cada una de las actividades en las cuales ha participado y que se ha beneficiado al máximo de los programas dentro de su proceso de rehabilitación, entre otros factores.

Reconocemos que el Recurrente cumplió parcialmente con nuestra *Resolución,* notificada el 13 de mayo de 2026, al evidenciar su indigencia. Sin embargo, no acreditó cumplimiento a los requisitos de forma y contenido para perfeccionar su recurso, a tenor de la Regla 59(E)(1)(d) de nuestro Reglamento, *supra.* Como mínimo, el Recurrente omitió incluir en el apéndice de su recurso su petición de reclasificación al nivel de custodia mínima; una copia de su evaluación de custodia y del dictamen mediante el cual presuntamente el DCR denegó su solicitud de reclasificación; una copia del petitorio de reconsideración y de su correspondiente dictamen denegatorio.

A pesar de que el referido incumplimiento pudiese dar lugar a la desestimación de su recurso, según advertimos, en aras de concederle un mayor acceso a la justicia, tomamos como buenas las fechas de los dictámenes impugnados, a las cuales el Recurrente hace referencia en su recurso. No obstante, sin el beneficio de los documentos en los cuales el Recurrente sustenta su postura, estamos impedidos de revertir el dictamen administrativo impugnado. Debido a la referida omisión, el Recurrente no nos puso en posición de examinar la corrección del pronunciamiento impugnado. Los errores señalados no se cometieron.

**IV.**

Por los fundamentos que exponemos a continuación, confirmamos el dictamen administrativo objeto de este recurso.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones